IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



ALANNA D. KOFFMAN,

    **Plaintiff,**

v.                                                                    Civil Action No. 2:12cv304-HCM-DEM

UNUM LIFE INSURANCE COMPANY OF AMERICA,

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment. The central dispute is whether Defendant Unum Life Insurance Company of America ("Defendant" or "Unum") properly denied Plaintiff Alanna Koffman's ("Plaintiff") claim for Accidental Death & Dismemberment ("AD&D") benefits for the death of her husband, Peter B. Koffman ("Koffman" or "Decedent"). Additionally, there are two preliminary disputes: (1) what effect a choice of law clause has and (2) whether Defendant complied with the local rules.

On January 15, 2013, Defendant requested oral argument with regard to the preliminary disputes. Doc. 25. The same day, Plaintiff filed a letter suggesting that oral argument was unnecessary. Doc. 26. Neither party requested oral argument on the substance of their Motions. After examining the Motions, the associated briefs, and the administrative record, the Court finds that oral argument is unnecessary because all facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons explained herein, the Court **GRANTS** Defendant's Motion for Summary Judgment, Doc. 20, and **DENIES** Plaintiff's Motion for Summary Judgment, Doc. 18.

1

# I. Factual Background and Procedural History[1]

## 1. Policy and Coverage

Through his employment at Michael Baker Jr. Inc., Mr. Koffman participated in a group benefits plan (the "Plan") that included an AD&D policy insured by Unum. R. at 21–25.[2] The policy includes both basic and supplementary AD&D benefits totaling $361,000. R. at 18; see also Doc. 21 at 4 n.3; Doc. 23 at 2. The Plan specified that benefits would be paid if the Mr. Koffman had an "Accidental Bodily Injury[, which] means a bodily injury that is the direct result of an accident and not related to any other cause." R. at 83. The Plan does not further define "accident." It does, however, provide that some accidental losses are excluded from coverage:

> [The] plan does not cover any accidental losses caused by, contributed to by, or resulting from[:]
>
> [(1)] Suicide, self destruction [sic] while sane, intentionally self-inflicted injury while sane, or self-inflicted injury while sane, or self-inflicted injury while insane
> . . .
> [(2)] The use of any prescription or non-prescription drug, poison, fume, or other chemical substance unless used according to the prescription or direction of your or your dependent's physician. This exclusion will not apply to you or your dependent if the chemical substance is ethanol
> . . .
> [(3)] Disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.

R. at 77. Benefit determinations are committed to the discretion of Unum. R. at 95.

## 2. Decedent's Personal History and Death

Mr. Koffman had a history of anxiety, depression, and abuse of substances including alcohol, prescription drugs, and illegal drugs. R. at 405–23, 426–27, 477–97. His substance

---

[1] This Section does not reflect the entire background and history, but only those parts relevant to the instant motions.
[2] All "R." cites are to the sealed administrative record in this case which is Bates-stamped as UA-CL-LIFE-000001 through UA-CL-LIFE-000733. Only the last one to three digits will be referenced to show the appropriate page number. In its briefs, Plaintiff occasionally cites to the policy in the unnumbered portion of the record. See, e.g., Doc. 19 at 2 n.1–5. However, the relevant language is the same as the copy of the policy in the administrative record, so the Court cites the numbered record for convenience.

abuse began when he was a teenager and continued until shortly before his death, and included combining substances such as Xanax and alcohol. R. at 427, 495. Mr. Koffman died on August 13, 2010, at age 40. R. at 107. At the time of his death, Mr. Koffman had current prescriptions for Trazodone and Prozac (fluoxetine). R. at 405–09. Mr. Koffman had previously been prescribed Xanax, but that prescription was discontinued on November 2, 2009, and there is no record of a prescription for Xanax after December 2, 2009—over eight months before his death. R. at 422. Mr. Koffman was also prescribed Hydrocodone for two months starting February 8, 2010, and ending April 8, 2010—over four months before his death. R. at 417. When Emergency Medical Services arrived at his home, his family indicated that "they believe[d] [he] may have taken some pills earlier, possibly a combination of Xanax and Dilaudid." R. at 203. The Medical Examiner's report also recounts that Plaintiff reported that Mr. Koffman "had been abusing prescription drugs and recently started using powder cocaine." She "observed [Mr. Koffman] to have labored breathing" before she called 911. R. at 567.[3]

An autopsy report dated December 14, 2010, and toxicology reports dated November 3 and December 9, 2010, reveal that Mr. Koffman had fluoxetine in his blood and hydromorphone (Dilaudid) and alprazolam (Xanax) in his urine and bile. R. at 568–75. In fact, his urine, bile, and blood were tested twice for multiple substances, including opiates and acetaminophen, but nothing was detected besides the fluoxetine in his blood and the hydromorphone and alprazolam in his urine and bile. Id. The autopsy also revealed "copious tracheal foam, a distended urinary bladder, mild fatty change of the liver, and congestion of the visceral organs" "consistent with recent drug intoxication" and "evidence of focal myocardial scarring which may have predisposed [Mr. Koffman] to a cardiac arrhythmia particularly during a period of prolonged

---

[3] The Medical Examiner stated that this information came from the police report, but the police report itself was not in the record. Apparently, Defendant was unable to obtain it, because the detective stated that the police "do not release their investigative report." R. at 593.

3

respiratory depression." R. at 570. The medical examiner also opined that "[h]ydromorphone []
and alprazolam [] can act together to produce a respiratory depression and even death. An
incipient pneumonia, distended urinary bladder, and hydromorphone and alprazolam detected
only in the bile and urine but not in the blood, all suggest a prolonged period of respiratory
depression before death." Id. Ultimately, the medical examiner concluded that Mr. Koffman's
cause of death was "[c]omplications of combined hydromorphone, alprazolam[,] and fluoxetine
intoxication." Id.

Defendant employed a consultant, Kristin G. Sweeney, M.D., to review the toxicology
reports, the autopsy report, the police report, and numerous other documents related to Mr.
Koffman's treatment and prescription history, which are also in the record. See R. at 596. The
consultant concurred with the medical examiner on the cause of death. The consultant further
noted that Mr. Koffman had no prescription for Dilaudid and no current prescription for Xanax.
The consultant also opined that "hydromorphone is [] a metabolite of hydrocodone," but "[n]o
hydrocodone was found in urine, bile[,] or blood" and "[t]he most recent hydrocodone
prescription was dated 2/8/10." R. at 601. The consultant concluded by stating that Mr.
Koffman's "use of [both] hydromorphone (Dilaudid), which had not been prescribed," and
"alprazolam (Xanax), which was not currently prescribed, substantially cause his death. R. at
603.

### 3. Defendant's Claim Decisions

On February 10, 2011, Defendant denied Plaintiff's claim. R. at 628. Defendant stated
that its decision was based on a review of Mr. Koffman's toxicology reports, his autopsy report,
the police report, records from the physicians and pharmacies Mr. Koffman had used, the record
of a pharmacy canvas, and his death certificate. R. at 629. Defendant explained that with all this
information, and the opinion of their medical consultant, they determined that Mr. Koffman's

death was not an "Accidental Bodily Injury" and, even if it were, it was excluded because it was caused by the use of an unprescribed drug (hydromorphone), Mr. Koffman's mental disorder (polysubstance dependence), and because the voluntary ingestion of the drug was a self-inflicted injury while sane. R. at 630–31. In response, Plaintiff retained counsel to file an appeal. R. at 643. Plaintiff, assisted by counsel, filed an appeal on April 14, 2011. R. at 649–52. However, there is no record of Plaintiff submitting any additional evidence, or any alternate medical opinion. On April 29, 2011, Defendant upheld its original decision, reiterating that its opinion was that the medical evidence showed that complications resulting from mixing an unprescribed drug (hydromorphone) and a no longer prescribed drug (alprazolam) with a prescribed drug (fluoxetine) substantially caused his death, and therefore, his death was excluded under the policy. R. at 670–74.

**4. Procedural History**

Plaintiff filed suit on June 1, 2012, to challenge Defendant's claim determination. Doc. 1; see also Employee Retirement Income Security Act ("ERISA") § 502, 29 U.S.C. § 1132 (2012). On August 10, 2012, upon the joint motion of the parties, the Court entered an Order that this case would be determined on cross-motions for summary judgment based on the administrative record. Doc. 13; see also Doc. 10. Plaintiff's Motion, Doc. 18, and Defendant's Motion, Doc. 20, were filed on November 30, 2012. Defendant's Opposition, Doc. 22, and Plaintiff's Opposition, Doc. 23, were filed on December 21, 2012. On December 27, 2012, Defendant filed a Reply to address an alleged rule violation and a choice of law argument. Doc. 24. The Court has determined that oral argument is not necessary; accordingly, this matter is ready for adjudication.

## II. PRELIMINARY ISSUES

**1. Local Rules Violation**

Plaintiff argues that Defendant's brief fails to comply with local rules by omitting a "specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed." Doc. 23 at 2 (citing E.D. Va. Loc. R. 56(b)). Plaintiff asserts that this failure merits denial of Defendant's Motion. Doc. 23 at 3. Plaintiff is correct that Defendant's nine-page "Statement of Facts/Record Evidence" section—which is replete with record citations—does not specifically identify which facts are material or undisputed, nor is it captioned as such. See Doc. 21 at 3–12. Nonetheless, the Court ordered that this ERISA "case should be decided by the Court based on its review of the administrative record" via "cross motions for summary judgment based on the administrative record," so Plaintiff's contention, though technically correct, is not persuasive. See Doc. 13. Additionally, Defendant's thorough recitation of facts, replete with citations, could not reasonably have left Plaintiff at a loss as to which facts were material or undisputed. Further, in an ERISA case, this Court does not look at new evidence, but reviews the administrative record to see if the insurer's denial of benefits was reasonable and based on substantial evidence. See In re Marshall, 261 F. App'x 522, 525 (4th Cir. 2008). Accordingly, in this unique context, Defendant's technical noncompliance with the rule will be overlooked.

**2. Choice of Law**

Plaintiff argues that, because the Plan's residual choice of law clause selects Maine as the governing jurisdiction, this Court is also bound by the decisions of the Court of Appeals for the First Circuit. Doc. 23 at 3. This argument is based on a strained reading of the choice of law clause in the Plan. The Plan is "governed by the laws of [Maine] and to the extent applicable by

[ERISA]." R. at 34. This clause does not manifest any agreement to be bound by a particular Circuit Court of Appeal's interpretation of federal law, even if agreeing to such a thing were permissible.[4] The cases Plaintiff cites are wholly inapposite—all of them pertain to enforcing the selection of a particular state's law, not the selection of a particular interpretation of federal law. See Doc. 23 (citing Kunda v. C.R. Bard, Inc., 671 F.3d 464, 467 (4th Cir. 2011) (New Jersey or Maryland law); Jimenez v. Sun Life Assur. Co. of Canada, 486 F. App'x 398, 406 (5th Cir. 2012) (Texas or Louisiana law) cert. denied, 133 S. Ct. 1282, 185 L. Ed. 2d 186 (U.S. 2013); and DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918, 922 (6th Cir. 2006) (Michigan or Ohio law)). Further, Plaintiff has not identified any material differences between the First and the Fourth Circuit's opinions in the ERISA issues before this Court. Compare Wickman v. Nw. Nat. Ins. Co., 908 F.2d 1077, 1088 (1st Cir. 1990) (heavily relied on by Plaintiff to define "accident") with Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340, 343 (4th Cir. 2006) (explicitly applying the Wickman test). Accordingly, this contention is moot.

### III. LEGAL STANDARDS

"[W]here an ERISA plan vests the administrator with 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' as this Plan does, courts review an administrator's decision for abuse of discretion." Eckelberry, 469 F.3d at 343 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); see also R. at 95. The Court does not seek the best or its preferred interpretation, but rather "will not disturb any reasonable interpretation by the administrator." Baker v. Provident Life & Acc. Ins. Co., 171 F.3d 939, 941 (4th Cir. 1999) (citing Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 85 (4th Cir.1993)).

---

[4] When it comes to federal law, "[f]ederal courts comprise a single system applying a single body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case." Desiano v. Warner-Lambert & Co., 467 F.3d 85, 91 (2d Cir. 2006) (citing Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir.1993)) aff'd sub nom. Warner-Lambert Co., LLC v. Kent, 552 U.S. 440 (2008).

But where, as here, "the entity that administers the plan . . . both determines whether an employee is eligible for benefits and pays benefits out of its own pocket . . . this dual role creates a conflict of interest[] that a reviewing court should consider [] as a factor in determining whether the plan administrator has abused its discretion in denying benefits." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). "[T]he significance of the factor will depend upon the circumstances of the particular case." Id. Accordingly, the Court reviews Defendant's "determination in this case for abuse of discretion, taking into account [the structural] conflict of interest as one of the factors in determining reasonableness." Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008); see also Doc. 21 at 14 (acknowledging the same). "Under the abuse of discretion standard, a decision is reasonable if it is the result of a deliberate, principled reasoning process and is supported by substantial evidence." In re Marshall, 261 F. App'x 522, 525 (4th Cir. 2008) (citing Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir.1995))

## IV. ANALYSIS

Defendant denied Plaintiff's claim for AD&D benefits based on the death of her husband, Peter B. Koffman ("Decedent" or "Koffman"). In its denial of benefits, Unum cited four grounds: (1) Koffman's death was not an "accident," and, even if it was, the policy excluded his death because it was caused by, contributed to by, or resulting from: (2) the improper use of prescription drugs; (3) self-inflicted injury while sane; and (4) a mental disorder. If the Court holds, with regard to any one of the four grounds, that Defendant's decision is based on a reasonable interpretation of the plan and supported by substantial evidence, then Defendant is entitled to judgment as a matter of law and its motion should be granted. Only if the Court holds that Defendant abused its discretion, and none of its four grounds for denial were the result of a deliberate, principled reasoning process supported by substantial evidence, is Plaintiff entitled to

judgment as a matter of law. Because one ground is clearly dispositive of this matter, it is addressed first and then the other grounds are briefly discussed.

At the outset, it is beneficial to deal with one of Defendant's foundational factual determinations: that Mr. Koffman voluntarily ingested the drugs that caused his death, as opposed to accidentally ingesting them. R. at 631. As detailed above, Mr. Koffman had a long history of abusing substances, and statements from Plaintiff to EMS indicate that that is what Mr. Koffman had done that night. There is no contrary evidence indicating that any drug he took was taken by mistake, save Plaintiff's plea in briefing to infer that Mr. Koffman "would not have accepted the risk of combining drugs." Doc. 19 at 16. However, the record reflects otherwise, with one of Mr. Koffman's physicians opining concern about Mr. Koffman's consumption of alcohol while on Xanax. R. at 427. Accordingly, there is substantial evidence to support Defendant's finding that Mr. Koffman voluntarily ingested the drugs that caused his death.

## 1. Drug Exclusion

The "[P]lan does not cover any accidental losses caused by, contributed to by, or resulting from . . . [t]he use of any prescription or non-prescription drug . . . unless used according to the prescription or direction of your or your dependent's physician." R. at 77. Defendant interpreted the Plan to exclude a death caused by prescription drugs that were either unprescribed or whose prescriptions had long expired. This is supported by a plain reading of the Plan. If a drug was not prescribed, using it is not use according to the prescription or direction of your physician, absent some other indication of a physician's instructions. R. at 77. Further, if a drug was prescribed at one time, but used eight months later, that use could reasonably be considered to have not been use according to the prescription or direction of your physician.[5]

---

[5] A much shorter duration might raise concern, especially taken in conjunction with a structural conflict of interest, but those facts are not before the Court.

Plaintiff does not counter this interpretation in her briefs. This is a reasonable interpretation of the Plan.

Here, Mr. Koffman's bile and urine was found to contain hydromorphone and alprazolam; his blood contained fluoxetine—all are prescription drugs. Mr. Koffman never had a prescription for hydromorphone, and his prescription for alprazolam (Xanax) had long expired. The medical examiner and the medical consultant concurred that this mixture, along with fluoxetine, substantially caused Mr. Koffman's death. Defendant determined that these circumstances triggered the drug exclusion. This application is not unreasonable. Mr. Koffman used prescription drugs without prescriptions for them, accordingly there is no evidence he used them "according to the prescription or direction of [his] . . . physician." This use substantially caused his death. The medical examiner opined that "[h]ydromorphone [] and alprazolam [] can act together to produce a respiratory depression and even death," and concluded that a respiratory depression was consistent with the other observations at the autopsy: "copious tracheal foam, a distended urinary bladder, mild fatty change of the liver, and congestion of the visceral organs."

The only other wrinkle is the fact in the record that hydrocodone can metabolize to hydromorphone; however, hydrocodone was also no longer prescribed. Further, ingestion of hydrocodone was ruled out by the medical consultant since no other opiates were found in Mr. Koffman's system.[6] Moreover, Mr. Koffman's family indicated to EMS personnel that they thought he took Dilaudid, which is hydromorphone. Accordingly, Defendant's conclusion, in reliance on two uncontroverted medical opinions, that Mr. Koffman's death was substantially caused by his voluntary ingestion of unprescribed drugs—hydromorphone and alprazolam—is

---

[6] The medical examiner's report did not even mention the possibility of hydrocodone metabolization.

supported by substantial evidence, and the denial of benefits under the drug exclusion was the product of a "deliberate, principled reasoning process." In re Marshall, 261 F. App'x at 525.

## 2. Definition of "Accidental Bodily Injury"

In its denial of benefits, Defendant also stated that Mr. Koffman's death was not an "accident," as the word is used in the Plan. The Plan defines "Accidental Bodily Injury" as "a bodily injury that is the direct result of an accident and not related to any other cause." R. at 83. The Plan does not further define "accident." In determining whether an event was an accident,

> [i]nitially, the court asks whether the insured subjectively expected his actions to result in injury or death. If the insured "did not expect an injury," the fact-finder must "examine whether the suppositions which underlay that expectation were reasonable" and must do so "from the perspective of the insured." However, "if the fact-finder, in attempting to accurately determine the insured's actual expectation, finds the evidence insufficient to accurately determine the insured's subjective expectation, the fact-finder should then engage in an objective analysis of the insured's expectations." This "objective analysis" asks "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct."

Eckelberry, 469 F.3d at 343 (quoting Wickman, 908 F.2d at 1088). Here, we have no indication what Mr. Koffman's subjective expectations were, so we apply the objective test.[7]

Tailored to the circumstances before the Court, the question becomes whether Defendant's conclusion that Mr. Koffman's death was not an accident is a reasonable assessment of whether "a reasonable person, with background and characteristics similar to [Mr. Koffman], would have viewed the injury as highly likely to occur as a result of [his] intentional conduct." Eckelberry, 469 F.3d at 343. Here, Defendant was well educated and was a civil engineer. R. at 494. He had been prescribed two of three drugs that caused his death, and so had been informed of their side effects and dangers. R. at 405–23, 426–27. Further, he had a long history of

---

[7] The parties concur with this statement, as they have both argued this issue from the "background and characteristics" prong of test. Doc. 21 at 23; Doc. 19 at 16.

11

treatment for substance and drug abuse including inpatient treatment, intensive programs, therapy, education, training, and Alcoholics Anonymous meetings. R. at 426, 477–78, 479–94. Defendant cited this treatment as significant because Mr. Koffman would have known the risks associated with taking multiple unprescribed drugs. R. at 670–74.

Defendant's "intentional conduct" was ingesting hydromorphone, alprazolam, and fluoxetine, while having a prescription only for fluoxetine. It is not unreasonable for Defendant to conclude that a reasonable person with Mr. Koffman's background and characteristics—especially his extensive treatment record—would have known that polysubstance abuse was highly likely to cause complications that could result in death. In rejecting a claim for accidental death, the Fourth Circuit found conduct similar to that of Mr. Koffman, namely drunk driving, a form of gambling, not an accident. See Eckelberry, 469 F.3d at 346. Defendant does not assert that Mr. Koffman intended to die. R. at 672. But "unjustifiable optimism about one's odds (or failure even to calculate them) does not relieve conduct," which Mr. Koffman knew or should have known was highly likely to cause complications that could result in death, "of foreseeable results." Eckelberry, 469 F.3d at 346. Defendant was not unreasonable in concluding that such conduct was not an accident, and denying Plaintiff's claim for AD&D benefits on this ground. See Id. Accordingly, Defendant's denial of benefits based on this exclusion is the result of a principled deliberative process, based on a reasonable interpretation of the Plan, and supported by substantial evidence.

### 3. Self-inflicted Injury While Sane

Defendant further argues that the Plan's exclusion of "[s]uicide, self destruction [sic] while sane, intentionally self-inflicted injury while sane, or self-inflicted injury while sane, or self-inflicted injury while insane" excludes Mr. Koffman's death. Doc. 21 at 20–22; R. at 77. In briefing before this Court, Defendant argues that because the list includes "*intentionally* self-

inflicted injury while sane," therefore, "self-inflicted injury while sane" must mean "*unintentionally* self-inflicted injury while sane." R. at 77 (emphasis added); Doc. 21 at 21. Carrying this broad proposed interpretation to its fullest connotations would be absurd, since it would embrace many events that are certainly accidents, and an insured would reasonably expect to be covered—single-car vehicle accidents, injuries from home maintenance, tripping on your own feet, etc. Nonetheless, as Defendant states, "[a] basic principle of contract interpretation . . . is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." Doc. 21 at 21 (quoting Am. Roll-On Roll-Off Carrier, LLC v. P & O Ports Baltimore, Inc., 479 F.3d 288, 293 (4th Cir. 2007)). As such, the clause should be given meaning, but the meaning Defendant proposes is unreasonable. Rather, this vague clause is reasonably read as a catch-all for self-inflicted injury that was not intentional but was also not truly accidental. Analyzing the clause this way makes it, essentially, an incorporation of the Eckelberry definition of accident. See Eckelberry, 469 F.3d at 34 (parsing the difference between intending a consequence or foreseeing a highly likely consequence, and holding that neither of those circumstances can be characterized as accidental). Interpreted this way, the analysis is the same as the consideration of whether Mr. Koffman's death was an accident. Accordingly, for the same reasons, application of this exclusion was appropriate, even if less persuasive than the other three grounds for denial.

### 4. Mental Disorder – Polysubstance Dependence

The Plan also excludes accidental losses caused by a "mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders" ("DSM"). R. at 77. The DSM defines polysubstance dependence as "repeatedly using at least three groups of substances (not including caffeine and nicotine), but [with] no single substance predominat[ing]"

for a "12-month period." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 293–95 (4th ed. 2000) ("DSM").

Mr. Koffman had previously been diagnosed with polysubstance dependence on July 15, 2009. R. at 496. Upon reviewing Mr. Koffman's treatment history, circumstances of death, and other records, Defendant's medical consultant opined that Mr. Koffman's death was contributed to by a relapse of his polysubstance dependence. R. at 603. Among other things, the medical consultant relied on the toxicological report showing two unprescribed drugs, his long struggle with substance abuse, his recent DUI conviction, and his family's statements that he had recently been abusing prescription drugs and cocaine. R. at 596–99. Defendant's medical consultant opined that this mental disorder of polysubstance dependence led to Mr. Koffman's ingestion of the unprescribed drugs that resulted in his death. R. at 603.

Plaintiff argues that "[t]he fact that such diagnosis was made, not by [Mr. Koffman's treating psychologists and psychiatrists], but by a pathologist [the medical consultant] retained and compensated by [Defendant], calls into question not only the accuracy of the diagnosis, but the reason for doing so." Doc. 23 at 11. However, the record reflects that the diagnosis was initially made by Mr. Koffman's treating licensed clinical social worker at Tidewater Psychotherapy services. R. at 496–97. Defendant's medical consultant looked at all the evidence, and that original diagnosis, and opined that Mr. Koffman's polysubstance dependence had relapsed to contribute to his death. There were no conflicting professional opinions regarding Mr. Koffman's mental state. Accordingly, Defendant's denial on this exclusion is the result of a principled deliberative process and supported by substantial evidence.

## V. CONCLUSION

For the reasons explained herein, Defendant's denial of benefits was based on a deliberate, principled reasoning process, was supported by substantial evidence, and was based on reasonable interpretations of whether Mr. Koffman's death was an "accident," whether the drug exclusion applied, and whether the mental disorder exclusion applied. Any one of these grounds would be sufficient alone to justify a grant of summary judgment to Defendant. Accordingly, Defendant's Motion for Summary Judgment, Doc. 20, is **GRANTED**, and Plaintiff's Motion for Summary Judgment, Doc. 18, is **DENIED**.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: June 24, 2013